No. 21,492.

J. F. LESLIE, *Appellant,* v. J. S. COMPTON, *Appellee.*

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Payment Guaranteed without Maker's Knowledge— Payment by Guarantor—Rights of Guarantor—Statute of Limitations.* One who guarantees the payment of a note by a contract made with the payee, without the request or knowledge of the maker, and by reason of such guaranty is required to make payment, may thereby acquire a valid claim against the maker for reimbursement; but in such a case his attitude is that of a virtual purchaser of the note, rather than of a surety in the ordinary sense, and if five years elapse after the maturity of the note without the maker recognizing the guaranty, or even being informed of it, the statute of limitations may bar the guarantor's claim, notwithstanding that action is brought upon it shortly after his payment was made.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed May 11, 1918. Affirmed.

*C. M. Williams, W. G. Fairchild, H. S. Lewis,* all of Hutchinson, and *W. H. Vernon, jr.,* of Larned, for the appellant.

*G. Polk Cline,* and *Nellie Cline,* both of Larned, for the appellee.

The opinion of the court was delivered by

MASON, J.: On October 24, 1899, J. S. Compton executed a note to the Zeb Crider Commission Company, due April 24, 1900. About thirty days later J. F. Leslie signed a writing guaranteeing the payment of the note. In June, 1901, the holder of the note sued Leslie, and in time obtained a judgment against him, which he paid on April 16, 1916. On May 29, 1916, Leslie brought the present action against Compton for indemnity. He was denied relief on the ground that he had been guilty of laches, that the claim was stale and was barred by the statute of limitations. He appeals.

The rule is that a cause of action in favor of a surety against the principal debtor does not accrue, and therefore the statute of limitations does not begin to run thereon, until payment has been made. (*Mentzer v. Burlingame,* 78 Kan. 219; 97 Pac. 371; 25 Cyc. 1113.) And ordinarily this rule is

Leslie v. Compton.

applicable to a guarantor. Here, however, the rights of the parties are affected by the fact that Leslie became a guarantor, not only without any request on the part of Compton (as the court specifically found), but also without any knowledge of the fact on his part until this action was brought (as he testified and the court must be deemed to have found). It is true that by a contract with a creditor, made without the request or knowledge of the debtor, a person may bind himself as a guarantor of the payment of the debt. (20 Cyc. 1412.) But he does not thereby become a surety in the ordinary sense —his rights are not the same in all respects as those of a guarantor who has become such at the express or implied request of the principal. If he is compelled to pay the debt he may have a remedy over against the original debtor, but it is not based upon the principles of ordinary suretyship.

"It seems to be necessary as between the surety and his principal, but not, as between the surety and the creditor, that the principal should have notice of and accept the surety's offer to assume the relation." (32 Cyc. 30.)

"A surety cannot ordinarily recover indemnity from the principal, unless he became surety at the request of the principal, either express or implied." (1 Brandt on Suretyship and Guaranty, § 231.)

The following text from a recent work is borne out by the cases there cited:

"But in order to claim reimbursement of his principal, it is generally held that the surety must become such at the express or implied request of the former, otherwise he will be deemed a mere volunteer under the rule that one who, without authority, intermeddles with the affairs of another, even by paying his debts, cannot thus make himself the creditor of him whose debts he pays." (Spencer on Suretyship, § 118.)

Reference is made in the note thereto, and in a subsequent section (§ 139), to a conflict of authority on the subject, but whatever want of harmony there may be in the results reached is largely due to the fact that different grounds of liability were invoked and considered. Where it has been held that a guarantor who has become such without the request of the debtor has no claim to be reimbursed if he is compelled to pay, the reason given has been that the case is not one of ordinary suretyship. Where the right of reimbursement has been sustained it has not been because the guarantor was a surety in the usual sense, but because he was found to be

entitled to be regarded as a virtual purchaser of the debt. It has been said that—

"The fact that the guaranty was made at the request of the creditor and without the knowledge of the principal, does not affect the liability of the principal. The guarantor in such a case is not an officious intermeddler having no remedy." (12 R. C. L. 1099.)

The meaning clearly is, in view of the decision cited in support of the statement, that ignorance of the guaranty on the part of the debtor does not prevent his becoming liable to reimburse the guarantor. The statement that his liability is not affected thereby, if regarded as meaning more than that his liability is not prevented, goes beyond what is decided in the case referred to. There Jones had executed a bond (note) to Smith, with Black as surety. Smith sold it to Boyd, Carter guaranteeing it without the knowledge of the makers. Carter was required to pay it, and sued Jones and Black. In the opinion it was said:

"The plaintiff Carter is clearly entitled to a decree against the defendants, unless their objections that Carter was an officious intermeddler, and for that reason not entitled to relief, and to the bill on account of Boyd's being a party plaintiff, can avail them. . . . But it is said that Carter was an officious intermeddler, and on that account, can have no claim to the interference of a court of equity. It is true that he paid the amount of the bond to Boyd without any request, express or implied, from the defendants, Jones and Black, or either of them. He could not then have recovered at law, as was decided in a suit at law brought by him against them, *Carter v. Black,* 4 Dev. & Bat. 425. But in this court the plaintiff Carter stands in a very different situation. He is not suing here for money paid for the use of the defendants at their request. He became bound on the bond, at the instance of the plaintiff Boyd, and the defendant Smith, and, having paid the amount of it to Boyd, he claims as an equitable purchaser of it, and seeks here to recover on it . . . in the same manner as Boyd might do. . . . From what has been before said, in considering the objection, that Carter was an officious intermeddler, it is to be deduced, that Boyd must be regarded here, as bound to assign the bond to Carter." (*Carter v. Jones,* 40 N. C. 196, 198, 199, 200.)

In a similar case, B. & H. Boynton as principals, and Jedediah Boynton, as surety, made a note to John A. Place. At the request of Place, without the knowledge of the Boyntons, Dorwin also signed it. The court said:

"The act of Dorwin, in signing that note at the request of Place, did not create the relation of principal and surety, between him and the

Boyntons; but, as the money was raised for their benefit, very slight acts, recognizing that relation on their part, would place him, in the light of surety for them. Without some evidence, however, of that character, the relation does not exist, and Dorwin, on payment of the note, could not have sustained an action against them for money paid; for no one can make another his debtor, by paying his debt, without a request, either express, or implied. . . . If Dorwin, before the contract for delay was made, had been called upon by the plaintiff [the purchaser of the note], and had paid the note, he would have been entitled, by subrogation, to all the rights, and remedies of the creditor against the other parties thereon, and would stand as a purchaser of the note. This right of subrogation exists in equity, not only where the strict relation of principal and surety is formed, 'but where one is compelled to pay the debt in order to protect his own interests.' " (*Peake v. Estate of Dorwin*, 25 Vt. 28, 31, 32.)

These cases are regarded as establishing the doctrine that a guarantor who becomes such without the knowledge of the debtor, and is required to make payment, has a valid claim for reimbursement; but they go no further than to hold that such a voluntary guarantor is not deprived of recourse against the principal debtor upon the ground that he is a mere intermeddler. They proceed upon the theory that it is competent for the guarantor to become such by contract with the creditor alone; that when by virtue of the liability so assumed he is required to make payment he becomes virtually the purchaser of the claim against the debtor, or entitled to the rights of a purchaser. In that view it is proper that he should have all the remedies of the original creditor, but no reason is apparent why he should have any added right, or why he should be privileged to keep alive in this manner a claim which, so far as the debtor could know, had long since ceased to have any validity. In *Teberg v. Swenson*, 32 Kan. 224, 4 Pac. 83, this aspect of the matter is emphasized by the fact that the guarantor was given a formal assignment of the debt. The opinion concludes with the words:

"In the present case, however, the plaintiffs did not *volunteer* to discharge the obligation of the defendant. They were bound by their written guaranty to pay the debt of the defendant; and when they paid the same they took a written assignment of such debt from the creditor. This gave them the same right to recover the debt from the defendant which the creditor previously had." (p. 229.)

In the present case Leslie was not a surety for Compton in any sense that implied a contractual relation between them.

He had made an agreement with the owner of the note to see that it was paid. On being compelled to make payment in fulfillment of that obligation he had a remedy against Compton, but it was by virtue of his being subrogated to the rights of the payee, or of his having become the virtual purchaser of the note. If Compton had requested the execution of the guaranty, or if he had known of it and recognized it in any way—if Leslie had been his surety in the ordinary sense—he would have been chargeable with notice that, although no action had been brought against him within five years of the maturity of the note, proceedings might have been taken against Leslie, resulting in a payment which he might be called upon later to make good; but, as Leslie merely acquired the rights of a holder of the note, the statute of limitations protected Compton against him to the same extent as against any other purchaser. If it be objected that as a result of this view the statute of limitations had prevented a recovery by Leslie against Compton before his right of action against him accrued, a sufficient answer is that no cause of action ever accrued in favor of Leslie —he is in the attitude of one who has bought an outlawed claim. Compton was not at fault in the matter. A surety may acquire a claim for reimbursement by paying a debt which is alive as to him, but outlawed as to the principal. (*Reed v. Humphrey*, 69 Kan. 155, 76 Pac. 390.) A guarantor who has become such at the request of the principal has the benefit of an implied promise of indemnity, and a new and independent cause of action arises thereon whenever he is compelled to make a payment, irrespective of the time of maturity of the original debt. But a grantor who becomes such by an agreement with the creditor, to which the debtor is not a party, and is compelled to make payment, has no claim based upon an implied promise of reimbursement; his rights are equivalent to those of a purchaser of the debt, and his remedy is lost whenever an action on that is barred. No inequity results from this view in the present case. Compton was justified in believing that the note had been fully paid from the proceeds of mortgaged cattle, or that all claims upon it had been abandoned. Leslie could probably have protected himself by giving Compton notice of his relation to the matter, and causing him to be made a party to the action on the note. At all

events, the running of the statute in favor of Compton was not prevented by dealings between Leslie and the holder of the note, of which he had no knowledge, actual or constructive.

While not material to the decision, it may be pertinent to add that the defendant claimed a meritorious defense apart from that here considered.

The judgment is affirmed.