No. 27,737.

THE GUARANTEE TITLE AND TRUST COMPANY, *Appellant*, v. THE
VIOLA STATE BANK, and WILLIAM DOCKING, Receiver, *Appellees*.

(262 Pac. 1037.)

SYLLABUS BY THE COURT.

LIMITATIONS OF ACTIONS—*Implied Warranty of Title of Bonds—When Action
    Accrues.* Registered government bonds which could not be transferred with-
    out indorsement were deposited in a bank for safe-keeping. The bank's
    cashier placed forged assignments on the bonds and sold and delivered them.
    They passed through successive hands; were eventually surrendered to the
    government, where the forgeries were detected, the bonds canceled, new
    bonds issued in lieu thereof to the true owners, and action brought by the
    government against its transferor. Each successive transferee notified its
    transferor to appear and defend the suit. The bank did not do so, and its
    transferee was compelled to pay the amount of the bonds in question. *Held,*
    a cause of action against the bank on its implied warranty of title accrued to
    its transferee when the transferee was compelled to reimburse its successor
    in title.

Appeal from Sedgwick district court, division No. 1; J. EVERETT ALEXANDER,
judge. Opinion filed January 7, 1928. Reversed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the
appellant.

*Paul J. Wall, A. B. Burch* and *L. P. Brooks,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to enforce liability for breach of
an implied warranty of title to certain government bonds. A de-
murrer to plaintiff's petition was sustained on the ground that the
statute of limitations had run. The plaintiff appeals.

The facts are substantially these: Certain registered government
bonds, which could not be transferred without indorsement, were
deposited in the Viola State Bank for safe-keeping. The defendant's
cashier, without authority, placed assignments on the bonds, some in
September and some in October, 1920, and sold and delivered them
to plaintiff. The plaintiff, for full value, shortly thereafter passed
the bonds to other parties. They passed through several hands
and were eventually surrendered to the government, where the for-
geries were detected, the bonds canceled and new bonds issued in lieu

Bonds, 9 C. J. p. 60 n. 59. Limitations of Actions, 37 C. J. p. 838 n. 11.

thereof to the true owners, and action brought by the government against its transferor. Each successive transferee notified its transferor to appear and defend the suit by the government. There were three suits, one against the Commerce Trust Company, filed May 29, 1923, in which judgment was rendered February 20, 1924, and on demand was paid by the plaintiff March 28, 1924; another filed October 20, 1922, judgment June 18, 1924, and on demand paid by plaintiff July 28, 1924; and another action filed July 20, 1923. In the third action the defendant showed no disposition to appear and defend, and plaintiff having satisfied itself that it had no defense paid the claim on March 28, 1924, without judgment having been rendered.

In the instant case the trial court adopted the theory that plaintiff's cause of action was complete at the time of the original purchase of the bonds—at the time of the original implied warranty of title, and that the statute of limitations became a defense three years after September and October, 1920, the present action not being filed until September, 1925.

The plaintiff contends that while there may have been a cause of action for nominal damages immediately following its acquisition of the bonds, a new cause of action necessarily became available when the new and ultimate facts came into existence entitling it to reimbursement; that is to say, the defendant's liability as indemnitor accrued for the first time when plaintiff was compelled to indemnify its own successor in title. Also, that notice to the defendant to defend in the various suits was a substitute for action by plaintiff. The defendant argues that the warranty of title was broken as soon as made; that ignorance of the forgery made no difference; that discovery of the breach was not necessary to start the statute of limitations; that a cause of action accrued immediately upon delivery of the bonds with the forged assignments.

That there was an implied warranty of title appears to be conceded. The doctrine applies to tangible chattels (*Paulsen v. Hall,* 39 Kan. 365, 18 Pac. 225), and properly applies to choses in action such as bonds. (See *Ratcliff v. Paul,* 114 Kan. 506, 220 Pac. 279; 9 C. J. 60; 24 R. C. L. 182, 2 Williston on Contracts, 2d ed. § 977.) The question for consideration here is, When does the cause of action for breach of implied warranty of title accrue? A discussion of the subject in 2 Williston on Contracts, § 980, discloses two principal lines of authority. One treats the covenant as one of seizin for

which in some instances full damages as well as nominal damages may be recovered at once. The other treats the covenant as one of quiet enjoyment and denies recovery until possession has been interfered with, with the additional feature that if the buyer does not choose to wait he may tender back the property and recover his money. (See annotation L. R. A. 1916F, 818.) In the present instance plaintiff was a mere conduit of title. Immediately or soon after purchase it sold the bonds for full value. It would seem, therefore, that until the claim for reimbursement arose, the plaintiff was in position to recover no more than nominal damages. In *Hammerslough v. Hackett,* 48 Kan. 700, 29 Pac. 1079, the grantee by deed of a tract of land sued the grantor on his covenant of seizin on account of an adverse title which was found to be outstanding at the time of the conveyance. It was held that recovery could be for no more than nominal damages on account of the fact that plaintiff, after taking the purported title, parted with it for full value, so that if anyone had suffered actual damages it was his successor in title. It was said in the opinion:

"The covenants of seizin and of right to convey were broken at the time of the execution of the conveyance, and if Hackett had brought her action upon the covenants at once, and tendered a reconveyance of the same to Hammerslough, she would have been entitled to recover the consideration paid, with interest. Instead of availing herself of this opportunity, however, she accepted the deed and the land, and by her act and the operation of law she has transferred the land to others. . . . Since that time there have been several conveyances of the land, and each transfer has been for a substantial consideration. . . . During her ownership there was no adverse possession of the land nor any hostile assertion of paramount title in another. She suffered no actual loss, and the parties who claimed through her, it appears, have not been disturbed in their possession or ownership by any adverse claimant. With a view of recovering substantial damages, she tendered in her reply a reconveyance to Hammerslough, but this was wholly ineffectual, as the title or right to the benefit of the covenants had passed from her and had vested in her assigns. . . . That she is entitled to no more than nominal damages has practically been determined by this court in *Scoffins v. Grandstaff,* 12 Kan. 467." (pp. 706, 707, 708.)

If in the instant case plaintiff had sued defendant for breach of warranty of title and tendered back the bonds, recovery could have been had for substantial damages, but when plaintiff sold the bonds to other parties it was for the time being "whole," and no recovery could have been had except perhaps for nominal damages until the subsequent events which gave rise to a new claim for reimburse-

ment. (See annotation, 17 L. R. A., n. s., 1178, 1185.) This principle was affirmed in *O'Meara v. McDaniel,* 49 Kan. 685, 31 Pac. 303, and in *Loomis v. Loughry,* 109 Kan. 445, 199 Pac. 470, while a contrary position appears to have been taken in *Bolinger v. Brake,* 57 Kan. 663, 47 Pac. 537. The Hammerslough case was approved. It was said in the opinion:

"Perhaps it may be said where the title has been cured by adverse possession and the lapse of time, by estoppel, or otherwise, without cost or expense to the grantee, his recovery for a breach of the covenant or seizin should be limited to nominal damages. It may not be going too far to say that in any case where there has been a breach of this covenant, but the title has been healed, or all danger of its hostile assertion has passed away, or the covenantee has lost nothing and is in danger of no loss or liability, no more than nominal dmages are recoverable. The case of *Hammerslough v. Hackett,* 48 Kan. 700, comes within the principle last mentioned." (p. 668.)

We think the ordinary rule of indemnitor and indemnitee should apply; that the cause of action accrued only when the indemnitee suffered damage, and that the defendant's liability as indemnitor accrued when the plaintiff was compelled to indemnify its own successor in title. For a discussion of accrual of claims, liability over, etc., see *Leslie v. Compton,* 103 Kan. 92, 172 Pac. 1015. The question of when the statute of limitations commenced to run on the right of contribution between sureties was considered in the case of *Mentzer v. Burlingame,* 78 Kan. 219, 97 Pac. 371, wherein the court said:

"The statute did not begin to run until the cause of action for contribution accrued, and that was when the surety satisfied the debt. The action was not upon the note nor upon the judgment, but upon the implied promise for contribution. (*Reed v. Humphrey,* 69 Kan. 155, 76 Pac. 390; *Gross v. Davis,* 87 Tenn. 226, 11 S. W. 92, 10 Am. St. Rep. 635; *Zuellig v. Hemerlie et al.,* 60 Ohio St. 27, 53 N. E. 447, 71 Am. St. Rep. 707.) A surety's right of action for contribution from a cosurety accrues at the time he pays the debt. The statute of limitations does not begin to run against his right until such payment. (*Lowenthal v. Coonan,* 135 Cal. 381, 67 Pac. 324; . . . see, also, extended note to *Scott v. Nichols,* 27 Miss. 94, in 61 Am. Dec. 504-508.)" (pp. 220, 221.)

The defendant relies principally on *Rucker v. Hagar et al.,* 117 Kan. 76, 230 Pac. 70. The facts and principles there applied are not applicable here. There the holder of a promissory note sued the person from whom he had purchased by delivery, upon the implied warranty of title contained in R. S. 52-606 (negotiable instruments act), claiming that the indorsement on the note was forged. More than five years had elapsed after the purchase, during which time

the plaintiff was in possession of the note. It was held that his cause of action had existed from the date of the purchase and so was barred by limitation. Here the plaintiff disposed of the instruments in question for full value soon or immediately after purchase. It was a mere conduit of title. Conceivably, there might have been an action for and recovery of nominal damages based upon the original warranty when the bonds had been passed on to subsequent purchasers. In harmony, however, with the authorities cited, we think a new suit became available to plaintiff when the ultimate facts came into existence entitling it to reimbursement. The claim was not capable of being presented and litigated until that time.

After the forgery had been established beyond a doubt in the first two actions, it was not necessary in our opinion for the third action to go to judgment. There was no longer any question of plaintiff's liability to its transferee and it was justified in paying the claim and proceeding against its transferor.

The judgment is reversed and the cause remanded with instructions to overrule the demurrer.