**Don S. MARSALIS, Jr., Appellant,**

v.

**P. R. GARRE, Appellee.**

**No. 7470.**

Court of Civil Appeals of Texas.

Amarillo.

May 24, 1965.

Rehearing Denied June 21, 1965.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellee.

CHAPMAN, Justice.

This is a summary judgment case which had its origin in a suit filed by Don S. Marsalis, Jr., against Dr. P. R. Garre to recover $2,758.70, which he alleges is due by virtue of an assignment from Parker, Ford & Company, Inc. to him on an account originally owed by Dr. Garre to said company after appellant had paid that amount to the company.

Appellant, Don S. Marsalis, Jr., at the times pertinent hereto, was a registered representative of Parker, Ford & Company, Inc., investment bankers and brokers, with an office in Amarillo, Potter County, Texas. The company's principal office was in Dallas, Texas. Don Bucholz was its secretary and comptroller in the Dallas office. Appellant was a salesman for the stock brokers.

During September of 1961, appellee, Dr. P. R. Garre, engaged in a stock-market venture with Parker-Ford with appellant acting as the representative of the stock-brokerage company. After a number of transactions appellee was "sold out" by the Dallas office. He considered the brokerage company had not handled his stock properly and had been grossly negligent in their dealings with him. The resulting loss was $4,541.94. The company sent him a bill showing his loss, which he ignored. Mr. Bucholz called him on the telephone a time or two trying to work out a settlement on the account his company had billed the doctor for and he told him, "Rather than have any trouble about it, to get Don in any trouble, that I was willing to split it down the middle."

Mr. Bucholz later came to Amarillo and entered into a discussion with Dr. Garre, Mr. Marsalis, and the Amarillo office manager of the brokerage company, Mr. Walter Mount, Jr. The deposition of appellee shows:

"Mr. Buchholz said, 'How do you feel about this? How would you like to settle it?'

And I said 'I would like you to go back to Dallas and forget about it.' And he said, 'I don't believe I can do that.'

He said, 'What would you be willing to do?'

I said, 'You mention a figure.'

He said, 'We know there has been a number of irregularities and misunderstandings in this account, and for this Parker-Ford accepts the responsibility.'

He said, 'We will settle with you for the amount of your original loss.'

And I said, 'Mr. Buchholz, if you will return to me 100 shares of Ling-Temco stock, which you are holding in ransom, and place them on my desk

and take this check and walk out of my office and I won't bother you any more and you won't bother me any more, this settles it once and for all and I am through with Parker-Ford.' And I said, 'I will go along with you.'

So I said, 'There is one thing I want to do.' I said, 'I want to protect Don Marsalis.' I said, 'Now, if you want to sue both of us, get after it. We will fight it, but,' I said, 'I want to try to protect him from this, and if this settlement is satisfactory, we are all through with it and that's the end of it', and I said, 'I will give you this check.'

His answer was 'Doctor, if you will give us a check in the amount of—'

Q. Of the check that you actually gave?

A. The check that I actually gave, yes. He said, 'This wipes us clean; you won't hear any more from Parker Ford.'

Q. Do you feel that you had an understanding with Parker Ford that would relieve Don Marsalis from any liability?

A. I didn't know what the arrangement was. Mr. Buchholz and Mr. Marsalis got up and left the office and, when they came back, I discussed this check in front of Mr. Marsalis and I said, 'Don, is this all right with you?' And he said, 'Go ahead.'

I presumed that any arrangements that Mr. Marsalis had made with Parker Ford came under the heading of their business since they left my office to discuss it."

When asked in the deposition why he thought he did not owe the account appellee answered: "Very simply, I think it had been grossly mishandled without the proper investigation, without the proper and necessary consultation, a good bit of misunder-

standing as far as the time element goes, a misunderstanding amounting to what I consider gross negligence."

Appellant's deposition showed that after the discussions Dr. Garre and Mr. Bucholz arrived at a figure of $2,283.24 that the former gave the latter a check drawn on the Amarillo National Bank, and the check had marked on it, "Acc't. to date, paid in full."

Appellant was subsequently called upon by the company for the difference between the total amount claimed and the sum last mentioned. He paid it and then instituted this suit against Dr. Garre.

From the depositions mentioned, the pleading of the parties and the affidavits of Mr. Bucholz, Mr. Marsalis, Mr. Walter Mount, Jr., and Dr. Garre, the trial court summarily rendered judgment for appellee. It is from such judgment appeal is perfected to this court, the first three points denying the existence of accord and satisfaction in the acceptance of the check made by Dr. Garre for a lesser amount than the brokerage company's claim.

We believe under the undisputed admissible evidence the record shows the existence of accord and satisfaction as a matter of law in bar of appellant's claim.

In Root & Fehl v. Murray Tool Co., Com.App., 26 S.W.2d 189, the court held:

"It is the settled law of this state that, when an account is made the subject of a bona fide dispute between the parties as to its correctness, and the debtor tenders his check to the creditor upon condition that it be accepted in full payment, the creditor must either refuse to receive the check or accept the same burdened by its attached condition. If he accepts the check and cashes the same, he impliedly agrees to the condition, although he may expressly notify the debtor that he is not accepting the same with the condition, but is only applying the same as a partial payment on the account."

In Burgamy v. Davis, Tex.Civ.App., 313 S.W.2d 365 (N.W.H.) the court said:

"When appellant, knowing appellee was disputing in good faith the amount of the claim, received the check marked 'Payment of account in full,' he was given the option either to accept the check as full payment or to return the check to appellee, unaccepted, and hold appellee for his full claim."

In Texas & P. Ry. Co. v. Poe, 131 Tex. 337, 115 S.W.2d 591, the question for decision was whether Poe might settle a cause of action against the railway company for damages for personal injuries by the acceptance and cashing of a draft reciting it was in full settlement of his injuries, and then maintain a suit for such injuries, in the absence of an agreement to that effect. The court held there was no issue of fact.

Claims arising out of the commission of a tort are particularly applicable subjects for accord and satisfaction. Texas & P. Ry. Co. v. Poe, supra.

In Buford v. Inge Const. Co., Tex.Civ. App., 279 S.W. 513, where the endorsement on a check declared acceptance thereof would constitute full settlement of the disputed amount of the claim and appellee's manager accepted money represented by the check, the court held there was a valid accord and satisfaction.

In Industrial Life Insurance Company v. Finley, Tex., 382 S.W.2d 100, an insurance executive wrote their former agent stating the enclosed check was in full and final settlement for contingent commissions due the agent under their terminated contract. The agent claimed more commissions than the check represented. The enclosed check bore on its face a notation that it was full payment for all money due as contingent commissions under the agency contract and the former agent cashed the check. After reviewing the cases above

cited and many others our Supreme Court in the case just quoted held:

"Under the precedents we have reviewed, the conclusion is inescapable that the undisputed facts in the case at bar establish the defense of accord and satisfaction. The notation on Petitioner's check, and the statement of the basis of its tender to Respondent in the transmittal letter, were a clear and unequivocal offer of an accord. The act of Respondent in accepting and cashing the check with knowledge of the recitals on the check and in the transmittal letter was an acceptance. The resulting transaction constitutes an accord and satisfaction."

An affidavit in the record of Walter Mount, Jr., account executive and Amarillo office manager for Parker-Ford, in the record states the stock transactions in question resulted in a loss to Dr. Garre of $4,541.94; that in a meeting with Mr. Mount, appellant, Mr. Bucholz and appellee, after some discussions, the doctor offered to pay the company $2,283.24; that Mr. Bucholz for the company agreed to accept that amount; that Mr. Bucholz told appellee he would not hear anything else from Parker-Ford after such payment; that all present at the meeting, including appellant, agreed to the settlement.

Dr. Garre's affidavit shows he disputed the claim, "because I did not authorize plaintiff or Parker-Ford & Co. Inc., to buy long for me on September 18, 1961, and additionally because plaintiff and Parker, Ford & Co. Inc., were negligent in advising me incorrectly as to the date I would have to pay for the stock they had purchased in my name." He also made affidavit that he noted on the check, "Acc't. to date paid in full," and "that it was agreed by Parker, Ford & Co., Inc., and myself that the payment of the check would be in full settlement of their claim of $4,541.94, against me and that no further claim or demand would be made on me." Before the final agreement was made and the check transferred with the notation, "Acc't. to date paid in full," Dr. Garre had told Mr. Bucholz he also wanted to protect Don Marsalis, "and if this statement is satisfactory, *we* are through with it and that's the end of it * * * I will give you this check."

Mr. Bucholz replied: "Dr., if you will give us a check in amount of (the check he actually gave) * * * this wipes us clean; you won't hear any more from Parker-Ford."

Appellant argues by brief such conversation shows the settlement was only as between Parker-Ford and appellee; that the statement, "you won't hear from us" did not mean "you nor Don Marsalis will hear from us." This argument completely overlooks the statement, *"we* are through with it and that's the end of it. * * *" Appellant's affidavit stated he had previously told Dr. Garre before the settlement that he, appellant, would suffer the loss on his account, which makes the expression, *"we* are through with it and that's the end of it," even more meaningful. (All italics and parenthetical statements herein are ours.)

We cannot agree such interpretation as that contended for by appellant is reasonably deducible from the evidence under the authority of Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, the authority cited therefor. There the fact issue was whether the defendant acted in bad faith in violation of a fiduciary duty between the parties involving oil and gas leases, and the case had no analogy to the record made here.

Where affidavits and deposition statements are equivocal in nature the same rule is applied in summary judgment proceedings as those used to test the evidence in a conventional trial in deciding whether or not an instructed verdict should be given. Valley Stockyards Company v. Kinsel, Tex., 369 S.W.2d 19.

Under the admissible evidence here, we believe if the case had been tried to a jury

the court would have been legally obligated to instruct a verdict.

█ If all the statements in the affidavits and depositions in this record were admissible in evidence, it appears a judgment summarily rendered might have been improper, but many such statements constitute opinions of the parties and witnesses and conclusions of law clearly not admissible. For example, the principal contention of appellant which he argues by brief raised a fact issue is found in Mr. Bucholz' affidavit wherein he says:

"In our discussion with Dr. Garre I made it clear that the acceptance of his payment did not constitute a release. I told him that Parker-Ford & Company, Inc. would not pursue the matter any further, but that the payment would not constitute a settlement of any claim by Don S. Marsalis, Jr. against him. It is my opinion that Dr. Garre fully understood that Don S. Marsalis, Jr. retained the right to claim against any unpaid balance of this account."

█ His statement to the effect that "the acceptance of his payment did not constitute a release" is a conclusion of law and Mr. Bucholz does not show in the record to be an expert in that field such as to constitute an exception to the rule so that under such circumstances his conclusions of law would be inadmissible. Even a mixed conclusion of law and fact is inadmissible except under such exceptions as do not exist in Mr. Bucholz' testimony. Yaeger v. Long Bros. Drilling Co., Tex.Civ.App., 147 S.W.2d 276 (writ refused).

█ His next statement that "the payment would not constitute a settlement of any claim by Don S. Marsalis, Jr., against him" is clearly a conclusion of law under this record. The third sentence states on its face it is the affiant's opinion as to what Dr. Garre understood, and clearly would not be admissible in evidence in a conven-

tional trial. Such statements are insufficient to raise a fact issue. Section (e), Rule 166–A Vernon's Ann.Rules of Civil Procedure; Sparkman v. McWhirter, Tex. Civ.App., 263 S.W.2d 832 (writ refused); Yaeger v. Long Bros. Drilling Co., supra; Mason v. Mid-Continent Supply Company, Tex.Civ.App., 374 S.W.2d 922; Fonville v. Southern Materials Co., Tex.Civ.App., 239 S.W.2d 885 (N.R.E.).

We, therefore, believe under the statements made in the depositions and affidavits that would be admissible in evidence upon the trial on the merits, and upon the authorities cited, the record shows an accord and satisfaction as a matter of law.

The last point urges a material fact issue as to whether appellee had knowledge of the guaranty agreement between appellant and the brokerage company and whether appellee "assented thereto so as to give rise to an independent cause of action for reimbursement against him * * *," citing a number of authorities for his alleged position. We do not believe his authority supports his contention under the facts of the instant case. He cites a Kansas Supreme Court case styled Leslie v. Compton, 103 Kan. 92, 172 P. 1015. That case held:

"A guarantor who has become such at the request of the principal has the benefit of an implied promise of indemnity, and a new and independent cause of action arises thereon whenever he is compelled to make a payment, irrespective of the time of maturity of the original debt. But a guarantor who becomes such by an agreement with the creditor, to which the debtor is not a party, and is compelled to make payment, has no claim based upon an implied promise of reimbursement; his rights are equivalent to those of a purchaser of the debt * * *."

█ In the instant case the agreement between appellant and Parker-Ford was executed before the transactions with Dr.

Garre here involved came into existence, so there was no guaranty relation between appellant and appellee. When Mr. Marsalis paid the difference between the check Dr. Garre had given the brokerage company and the amount they had originally claimed, he acquired no more right than Parker-Ford had against Dr. Garre, the latter having in no way assented to the prior entry of another into a guaranty agreement. Accordingly, we believe the point is without merit and that the authorities cited do not support appellant's contention.

The judgment of the trial court is in all things affirmed.