(737 P.2d 55)

No. 59,842

ELDON KEE, JR., *Appellant,* v. EWING LOFTON and LOIS LOFTON, *Appellees.*

Opinion filed May 14, 1987.

*Steven K. Woodring,* of Gragert, Hiebert & Gray, of Wichita, for the appellant.

*Don W. Riley,* of Wichita, for the appellees.

Before ABBOTT, C.J., JACK L. BURR, District Judge, assigned, and JOHN W. BROOKENS, District Judge Retired, assigned.

ABBOTT, C.J.: The plaintiff, Eldon Kee, Jr., appeals from the entry of summary judgment against him and in favor of the defendants, Ewing Lofton and Lois Lofton. The trial court held that the statute of limitations barred the enforcement of a co-guaranty, and that an oral promise by the Loftons to pay their share of the note did not extend the statute of limitations.

When viewed as we must view a record where summary judgment has been entered (*Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 238 Kan. 384, 390, 710 P.2d 1297 [1985]), the pertinent facts are as follows: Mid-America Plastics, Inc., gave a promissory note to the Bank of Commerce of Chanute (Bank) on November 14, 1977. The note matured on May 14, 1978. On the same day Mid-America Plastics executed the promissory note, the Loftons executed a guaranty, guaranteeing payment to the Bank "on any and all loans, notes, rediscounts, over-drafts, or any other indebtedness contracted by, through, or

for the use, account or benefit of" Mid-America Plastics. There was no limit to the amount guaranteed.

On January 10, 1978, Eldon Kee, Jr., and his wife and Charles Cripps and his wife signed guaranties identical to the one signed by the Loftons. No reason was given as to why the Kees and the Cripps signed their guaranties a few months after the Loftons had signed theirs.

The record does not give the history of the note; however, in 1979 the corporation was in default, and the Bank made demand on Kee for payment on the guaranty. Kee signed a promissory note for $465,000, which is the amount Mid-America Plastics owed the Bank at that time. Neither Kee's wife nor any of the other guarantors signed the note, or any subsequent note.

Kee executed renewal notes every three to six months and made payments on principal and interest in varying amounts and at irregular intervals. He paid $187,745.69 interest and $335,000 principal on the indebtedness prior to commencing this action on July 12, 1985, seeking contribution from the Loftons. The largest payment on principal was a $215,000 payment on May 7, 1981.

In his petition, Kee alleged the parties were jointly liable for any payments on the corporation's indebtedness because of their guaranties and that the defendants had reaffirmed their obligation of contribution to Kee but had failed to contribute, and prayed for judgment against the defendants for one-half of Mid-America Plastics' indebtedness already paid by him and for one-half of any further payments he would make.

The defendants answered and filed a motion for summary judgment, asserting the applicable statute of limitations was five years from the date Kee executed his first promissory note to the Bank. Kee then filed a memorandum in opposition to defendants' motion for summary judgment, alleging that a certain oral promise by Loftons tolled the statute of limitations.

The transcript of the hearing on defendants' motion for summary judgment is not contained in the record on appeal. The trial court found that the statute of limitations began to run on the date Kee executed his first promissory note to the Bank on August 2, 1979, that the oral promise by Loftons to contribute, made after that date, did not toll the statute, and that, since more

than five years had elapsed, defendants' motion for summary judgment was sustained.

The dispositive question in this case is when does the statute of limitations commence to run. The key to the trial judge's decision on the question is finding of fact No. 2, which reads:

"The facts show that in the past, Plaintiff and Defendants jointly guaranteed a note for a third party to a bank. The third party defaulted, whereupon the Plaintiff made a promissory note to pay the original note. Plaintiff thus takes the rights of the bank against the Defendants, his co-guarantors. The date that that was done was August 2, 1979."

If that finding is sufficient to support summary judgment, it must be because the Lóftons set those facts out in their statement of uncontroverted facts and plaintiff failed to comply with Supreme Court Rule 141, 235 Kan. cx. Plaintiff did not file a timely pleading in opposition to summary judgment (it was out of time and filed two days before the hearing), nor did he separately number the paragraphs. The memorandum in opposition to the motion for summary judgment does contend plaintiff merely renewed the note, as opposed to purchasing it and extinguishing the corporate debt. The record before us gives no indication that defendants objected to plaintiff's unorthodox pleading, or that the trial court did not consider the pleading and facts set forth therein. Certainly, the deposition of Kee is not clear and contains conflicting testimony as to whether the note he gave to the Bank was a renewal note or was given in satisfaction of the corporate debt. The trial judge was correct in considering plaintiff's pleading, despite its irregularity.

Plaintiff's cause of action is for contribution, based on the written guaranty. Defendants' defense is that plaintiff purchased the corporate note from the Bank and the statute of limitations commenced to run the day the note was given (August 2, 1979). If defendants are correct, it is immaterial whether a 3-year or 5-year statute of limitations applied because both would have expired.

Perhaps a summary of applicable law would be helpful at this point.

A guaranty is a contract. A guarantor is not liable except under the terms of the guaranty. No cause of action on a guaranty arises until the debtor defaults. As soon as the corporation defaulted by failing to pay its obligation when it matured, a cause of action

arose and the statute of limitations commenced to run against the Bank. Clearly, the Bank's cause of action on the guaranty contracts has expired and the Bank must look to Kee's last note for payment.

The issue before us, however, takes the next step. That is, does a statute of limitations bar Kee from recovering contribution from his co-guarantors?

The right to contribution is not based on the guaranty (in the absence of language showing the parties' intent as to the proportion of the obligation each would bear). It is based on an implied agreement that if the guaranty is enforced, each guarantor will contribute his or her just proportion of the amount for which he or she might be held liable.

Contribution must be equally and ratably made. If one or more guarantors are insolvent, the solvent guarantors must each contribute the insolvent guarantor's share in the same proportion. *Appleford v. Snake River M. M. & S. Co.*, 122 Wash. 11, 210 Pac. 26 (1922).

Here, six persons signed as guarantors, and the record does not establish the insolvency of any of the parties. Thus, it would appear plaintiff is, at most, entitled to a one-third contribution from the Loftons (each having a 1/6th obligation).

The guaranty of payment binds the guarantors to pay the debt at maturity in the event the money has not been paid by the principal debtor. Upon default by the debtor, the obligation of the guarantor becomes fixed.

In Kansas the guarantors remain liable on the guaranty even though the principal debtor could have defeated an action brought against him by interposing the statute of limitations as a defense. *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P.2d 72 (1956). The test as to a guarantor is not whether the statute of limitations has run on the debt between the guarantors and the principal debtor at the time the co-guarantor seeks contribution. If the statute of limitations has not run as to the principal obligation at the time the guarantor pays the debt, it is immaterial whether the statute of limitations subsequently bars the creditor from enforcing the debt against the principal debtor and the remaining guarantors. *Leslie v. Compton*, 103 Kan. 92, 95-96, 172 Pac. 1015 (1918).

The right to seek contribution does not arise until a guarantor has paid more than his or her share of the common obligation. Thus, the right to contribution is contingent until the guarantor pays more than his or her fair share. *Cipra v. Seeger*, 215 Kan. 951, Syl. ¶ 4, 529 P.2d 130 (1974). The statute of limitations runs separately on each payment made after the guarantor pays his or her fair share of the debt, and is computed separately on each payment from the date upon which it is made. *Robinson v. Jennings*, 70 Ky. 630 (1870); *Bushnell v. Bushnell and another*, 77 Wis. 435, 46 N.W. 442 (1890); 18 Am. Jur., Contributions § 104.

Since a cause of action for contribution is based on an implied agreement that is not in writing, it is governed by the three-year statute of limitations set forth in K.S.A. 60-512. *Litwin v. Barrier*, 6 Kan. App. 2d 128, 626 P.2d 1232 (1981).

Thus, the dispositive issue is whether plaintiff's cause of action is barred because the statute of limitations commenced to run when Kee signed and delivered his first note to the bank, or did the statute of limitations commence to run as to each separate payment made *after* plaintiff paid his fair share of the indebtedness? The record before us is incomplete, but in the absence of a court determination that one or more of the guarantors are insolvent, plaintiff's fair share would be 1/6th of the allowable payments. Thus, even under a most favorable ruling, plaintiff could not receive contribution for all that he has paid in excess of his fair share.

In determining when the statute of limitations commences to run, Kansas seems to be in line with the majority of states as to what the test is. In 18 Am. Jur. 2d, Contribution § 14, the editors state:

"It is not necessary that the claimant's payment be made in cash. Its equivalent, as, for example, the negotiable promissory note of the claimant or anything else which the creditor accepts as satisfaction, is generally sufficient. Indeed, if one of several parties equally situated has in any manner been made to bear a larger proportion of a common burden than his just share, ordinarily he is entitled to call for contribution and assistance. It should be remembered that a note or other negotiable instrument, to be equivalent to payment, must have been accepted by the creditor in satisfaction of the whole or more than the claimant's fair share of the original obligation. If, for example, the original obligation was upon notes and the claimant's note is accepted merely as a renewal, without

canceling the old notes, the claimant is not entitled to contribution until he actually satisfies more than his share of the debt. And in general, where the creditor retains a right of action on the obligation for which a note is given, there is no satisfaction of the old debt. But it has been held that even a note executed in the name of an insolvent principal and merely indorsed by the plaintiff seeking contribution could be considered as payment where the payee of such note looked to such plaintiff for payment and not to the insolvent maker.

"*Observation:* Whether new notes are merely renewals of the old notes or whether the original notes are paid and discharged by the new ones depends upon the intention of the parties. The fact that the old notes were marked 'paid' and surrendered to the maker is not conclusive. The cause of action for contribution accrues at the date of payment, which in the former case is the date of payment of the new notes, and in the latter case, the date the new notes were taken in satisfaction of the obligation represented by the original notes."

In *Mentzer v. Burlingame*, 78 Kan. 219, 97 Pac. 371 (1908), Mentzer, a co-surety on two promissory notes that were in default, gave a new note to the bank for the amount of both notes in default. Burlingame, also a co-surety, did not sign the new note. The bank sued Mentzer on the new note and took judgment against Mentzer. Mentzer sued Burlingame for contribution more than five years after the new note was delivered to the bank. The trial judge held the statute of limitations barred the claim for contribution.

The Supreme Court held it was error to hold the statute of limitations barred the claim, reasoning as follows:

"The original notes were simply renewed by the giving of the new note. This is shown conclusively by the evidence and findings of fact. No proof was offered which even tended to show an agreement between the bank and the makers of the new note that it should operate as payment. The bank retained the old notes, which were not stamped or marked 'paid.' *Prima facie* the giving of the new note was merely a renewal, and not a payment. The burden rested upon the defendant to show the contrary. [Citations omitted.]

"The statute did not begin to run until the cause of action for contribution accrued, and that was when the surety satisfied the debt. The action was not upon the note nor upon the judgment, but upon the implied promise for contribution. [Citations omitted.] A surety's right of action for contribution from a co-surety accrues at the time he pays the debt. The statute of limitations does not begin to run against his right until such payment." 78 Kan. at 220.

In *Leslie v. Compton*, 103 Kan. 92, the defendant, Compton, executed a note to a corporation. Thirty days later the plaintiff, Leslie, signed a writing guaranteeing payment of the note. After default, the corporation sued Leslie and obtained a judgment.

Some *fifteen years* later, Leslie paid the judgment and then sued Compton. The Supreme Court said:

> "The rule is that a cause of action in favor of a surety against the principal debtor does not accrue, and therefore the statute of limitations does not begin to run thereon, until payment has been made. [Citation omitted.] And ordinarily this rule is applicable to a guarantor." 103 Kan. at 92-93.
>
> "A surety may acquire a claim for reimbursement by paying a debt which is alive as to him, but outlawed as to the principal. [Citation omitted.] A guarantor who has become such at the request of the principal has the benefit of an implied promise of indemnity, and a new and independent cause of action arises thereon whenever he is compelled to make a payment, irrespective of the time of maturity of the original debt." 103 Kan. at 96.

The court affirmed the trial court's dismissal but did so on a basis not germane to the case before us.

In the case at bar, the evidence before the trial court is so scanty and incomplete that we are unable to determine *what* the $465,000 note encompassed. The original note was for $325,000 and indicates that it was paid by renewal. The note at issue in this case is for $465,000, and has written on it "assumed note." Apparently the corporation had ceased its manufacturing operations by then and had disposed of some, if not all, of its equipment. It did have a contract to sell assets for $195,000, with at least $184,000 of that amount still due when the note for $465,000 was first signed on August 2, 1979. The contract's significance is that it could bear on both the Bank's and Kee's intent as to whether Kee's note was a renewal note or was accepted as full payment of the existing obligation, or obligations, of the corporation. Kee testified at one point that he signed the note because of his guaranty and because the Bank was pressing him to do so.

We are satisfied that it was error to grant summary judgment at this stage of the proceedings. It is a disputed point of fact what the intentions of Kee and the Bank were when the note of August 2, 1979, was executed, and the facts presented are such that a reasonable person could conclude that the note was merely a renewal note. If so, a three-year statute of limitations then applies to *each* separate payment made after Kee paid his proportionate fair share of the indebtedness. Thus, the trial court erred in granting summary judgment.

Based on the briefs and oral argument, we feel compelled to

comment on *Lindsey v. Zeller*, 10 Kan. App. 2d 4, 690 P.2d 394 (1984), *rev. denied* 236 Kan 876 (1985). The trial judge gave no indication he relied on *Lindsey*, and we deem it inapplicable to the facts of this case. We do not deem Article 3 of the U.C.C. applicable. There is no evidence in the record that the parties to this suit ever signed the original negotiable instrument individually. They signed separate writings that guaranteed the corporation's debts of any kind and without limit as to time or amount.

Reversed and remanded for further proceedings in conformity with this opinion.