

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 2-09-465-CV

ROBERT FLORES                                                                               APPELLANT

V.

DONALD EDWARD HANSEN                                                      APPELLEE
D/B/A SANDPIPER AVIATION

------------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In two issues, appellant Robert Flores appeals the trial court's order that granted appellee Donald Edward Hansen d/b/a Sandpiper Aviation's (Hansen's) motion for summary judgment.[2]    Flores argues that neither of Hansen's

---

[1]*See* Tex. R. App. P. 47.4.

[2]Sandpiper Aviation, a Fort Worth business, sells fuel and stores aircraft.

affirmative defenses—accord and satisfaction and release—precludes his claims. We affirm in part and reverse and remand in part.

**Background Facts**

Flores claims that in July 2007, he was working for Hansen when he fell into a hole on a catwalk and injured himself. Flores received treatment for his injuries. Hansen paid the cost of the ambulance that took Flores to the hospital and also paid Flores his regular wages when he was unable to work because of his injuries. Flores eventually returned to work.

Flores asked Hansen if Hansen would reimburse him for out-of-pocket medical expenses that were not being covered by private health insurance. Hansen repeatedly asked Flores to bring in the bills so he could pay them. Flores eventually brought Hansen medical bills totaling $1,154.31. Hansen told an employee to create a one-page document dated December 18, 2007, and titled "Final Settlement of expenses for accident Robert Flores had while on the job" (the December 18, 2007 document). The document itemized Flores's $1,154.31 worth of medical expenses that were accumulated from eleven particular bills. At the bottom of the document it recites, "In addition was paid sick pay and Medstar was paid $1,100.00." Flores signed and dated the document.

When Flores's counsel asked Hansen in a deposition to explain the purpose of the document, Hansen said,

> [Flores] was getting along real good. He was not having a problem. And I called him in and talked to him, and I said, ["]We need to bring

this thing to an end.["] And I did that for one sole reason. He kept on hurting himself and aggravating that arm with other incidents after.

And I told him, ["]You bring -- bring me all your bills through this day, and I will pay them . . . . But as of this date, we need to bring this to an end because you are repeatedly hurting yourself, and you're driving my trucks and cars, and I want to get this over with.["] And the idea behind this whole deal was to bring it to an end.

Hansen expressed his belief that the document served to release him from further claims by Flores. Hansen stated in an affidavit that he told Flores "that [Flores] would receive no future payments from [Hansen] for the incident and that this was [Hansen's] final payment for all bills, expenses[,] and any other damages associated with the alleged incident." However, Hansen also said that if Flores had brought him other bills that were dated prior to the date Flores signed the settlement document, Hansen would have paid them.

Flores said that by signing the document, he only agreed to not seek more compensation from Hansen for the bills Hansen had paid, not for other damages. Flores said in his affidavit, "Hansen never told me that the . . . reimbursement would constitute final payment due me because of the 7/2/07 incident." He explained, "I never intended to waive further medical expenses or any of the other damages . . . by accepting payment of [medical] expenses or signing the 12/18/07 Document."

Flores took Hansen's check for $1,153.31. In the bottom left corner of the check, under "MEMO," it states in part, "Final Settlement of expenses for accident." After receiving and depositing the check, Flores incurred more

3

medical expenses that he contends are related to his fall. Flores eventually quit his job with Hansen.

Based on the injuries sustained during his fall, Flores filed a lawsuit to assert claims against Hansen for negligence and gross negligence. Flores sought damages related to medical expenses, out-of-pocket economic losses, lost earning capacity, physical pain, physical impairment, disfigurement, and mental anguish. Hansen answered by way of a general denial; he also pled affirmative defenses of accord and satisfaction and release based on the one-page "Final Settlement" document and the $1,153.31 check that Flores had negotiated.

Hansen filed a motion for summary judgment based on both of his affirmative defenses. Flores responded to Hansen's motion, contending that neither the accord and satisfaction doctrine nor the release doctrine applies.[3] The trial court granted Hansen's motion and dismissed Flores's suit. Flores filed notice of this appeal.

### The Propriety of the Trial Court's Summary Judgment Decision

### Standard of review

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant, crediting

---

[3]Hansen objected to some of the evidence that Flores attached to his summary judgment response. The trial court overruled each of the objections.

evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

Release and accord and satisfaction are affirmative defenses. Tex. R. Civ. P. 94. By asserting these affirmative defenses, appellee assumed the burden to plead and produce evidence to support those claims. A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). Any deficiency in the proof of an affirmative defense is chargeable against appellee, as the party asserting it. *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 674 (Tex. App.—El Paso 1992, writ denied).

**Accord and satisfaction**

In appellant's first issue, he argues that the trial court could not have properly granted summary judgment based on appellee's accord and satisfaction defense.[4] In the trial court, appellee moved for summary judgment on that

---

[4]Rule 94 of the Rules of Civil Procedure includes accord and satisfaction as one of several affirmative defenses. *See* Tex. R. Civ. P. 94.

defense based on appellant's negotiating appellee's $1,153.31 check that includes the language "Final Settlement of expenses for accident." Appellee relied on common law and on a provision of the Business and Commerce Code.

Section 3.311 of the Texas Business and Commerce Code states that an accord and satisfaction occurs when a person in good faith tenders an instrument to the claimant as full satisfaction of the claim, the amount of the claim is unliquidated or subject to a bona fide dispute, and the claimant obtains payment of the instrument. Tex. Bus. & Com. Code Ann. § 3.311(a) (Vernon 2002). A "claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered *as full satisfaction of the claim*." *Id.* § 3.311(b) (emphasis added); *see Melendez v. Padilla*, 304 S.W.3d 850, 852–53 (Tex. App.—El Paso 2010, no pet.) (explaining that the "accord is merely a new agreement whereby one party agrees to give or perform, and the other to accept something other than or different from what she is . . . entitled to" and that "[s]atisfaction is then the performance of the agreement"). Section 3.311 applies to negotiable instruments. *Melendez*, 304 S.W.3d at 852-53.

Under the common law, "Texas courts have noted that '[c]laims arising out of the commission of a tort are particularly applicable subjects for accord and satisfaction.'" *Case Funding Network, L.P. v. Anglo-Dutch Petroleum Intern., Inc.*, 264 S.W.3d 38, 49 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)

6

(quoting *Marsalis v. Garre*, 391 S.W.2d 522, 525 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.)).  However,

> for this defense to prevail, there must be a dispute and an unmistakable communication to the [plaintiff] that tender of the reduced sum is upon the condition that acceptance will satisfy the underlying obligation.  The parties must specifically and intentionally agree to the discharge of one of the parties' existing obligations . . . . 'A valid accord and satisfaction requires that there initially be a legitimate dispute between the parties about what was expected.'

*Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000) (citation omitted) (quoting *Bueckner v. Hamel*, 886 S.W.2d 368, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).  Thus, to be an accord, "the statement accompanying the tender of a sum less than the [obligation between the parties] must be so clear, full[,] and explicit that it is not susceptible of any other interpretation."  *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1970).[5]  A necessary element of accord and satisfaction is that the claim amount was disputed.  That is, to prevail on the defense of accord and satisfaction, Hansen must have presented summary judgment evidence that he and Flores disputed the amount or type of damages Hansen should pay.  *See Lopez*, 22 S.W.3d at 863.  There is no evidence that Hansen and Flores disagreed.  Hansen does not dispute that Flores asked him to cover his out-of-pocket medical expenses.

---

[5]The parties have not cited authority to show that we should analyze statutory accord and satisfaction separately from the common law doctrine.  One court has noted that "section 3.311 does not conflict with the common-law doctrine of accord and satisfaction."  *Milton M. Cooke Co. v. First Bank and Trust*, 290 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  "Section [3.311] is based on a belief that the common law rule produces a fair result."  Tex. Bus. & Com. Code Ann. § 3.311, cmt. 3.

Hansen asked Flores to bring in every medical bill Flores had received "to date" and Hansen subsequently paid all the bills Flores provided. Hansen's own affidavit defeats his argument when he unequivocally states that "Flores never asked [him] to pay [Flores] anything else or compensate him in any other way as a result of the incident."

Accord and satisfaction also "requires a bargaining evidenced in a new contract," *Bueckner*, 886 S.W.2d at 372. Hansen has not presented evidence that any type of bargaining occurred with Flores. In fact, the evidence establishes that Flores asked for $1,154.31 plus sick pay and ambulance expenses and that he received those exact amounts. There is no evidence that he accepted something other than or different from what he was requested on that date.

Lastly, Hansen has failed to prove that he communicated to Flores that he was tendering payment to satisfy all claims Flores could have against Hansen as a result of the incident in such "clear, full, and explicit" terms that Flores could not possibly mistake Hansen's intent. Flores disputes that he was told that the $1,154.31 would be the final payment for every claim against Hansen resulting from his injuries. Both the memo on the check and the separate document dated December 18, 2007 refer only to "expenses." Hansen failed to prove the parties specifically and intentionally agreed that Flores would be relinquishing any and all claims against Hansen that might arise from the incident for the payment of $1,154.31.

8

Accordingly, Hansen has failed to present evidence that there was a bona fide dispute over the amount owed and that he clearly communicated the entirety of the subject matter the accord purported to cover. Therefore, Hansen is not entitled to summary judgment on his accord and satisfaction defense.

**Release**

Appellant next argues that the release document is limited and does not bar his current claims.[6] A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately or on the occurrence of a condition. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). It is subject to the normal rules of contract construction, including the rules of ambiguity. *Id*. A release extinguishes a cause of action and bars recovery on the released matter. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

A release does not have to "anticipate and identify each potential cause of action relating to the release's subject matter," *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000), but to preclude a claim, the release must "mention" it. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Although releases include claims existing at the time of execution, they may also include unknown claims and damages that

---

[6]Flores does not appear to dispute that the December 18, 2007 document is a release, as he refers to the document as such throughout his brief.

9

develop in the future. *See Keck, Mahin & Cate*, 20 S.W.3d at 698. However, a release does not necessarily or automatically include future claims without evidence of such intent. *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 388 (Tex. App.—Austin 2001, pet. denied) ("We note that while the release applied to all past and present claims at the time of its execution, the trial court could have found that it did not bar prospective claims that might arise in [the] future."); *Priem v. Shires*, 697 S.W.2d 860, 864 (Tex. App.—Austin 1985, no writ).

The December 18, 2007 document is titled "Final Settlement of expenses for accident Robert Flores had while on the job," lists Flores's medical bills, and bears the note "In addition was paid sick pay and Medstar was paid $1,100.00." The document does not say "release," but its content clearly reflects an agreement to finally settle any claim by Flores for payment by Hansen of the specified expenses listed therein. The document makes no reference to any other claims, past or future. Flores does not dispute Hansen's evidence that the bills represented the entirety of Flores's medical expenses at the time. Thus, the release in this case is very narrow and limited. The December 18, 2007 document serves as a final settlement of all Flores's medical expenses incurred prior to the date of Flores's signature.

Hansen argues that the definition of "expenses" should be expanded to cover other past damages as well, based on the notation at the bottom of the document "In addition was paid sick pay and Medstar was paid $1,100.00." Hansen argues that expenses cannot mean what expenses normally and usually

10

means because sick pay is not an expense. His argument ignores the use of the phrase "in addition" and the fact that the sick pay and Medstar's ambulance payment are separated from the itemized list of expenses and located below the "total" amount of the settlement. The use of the term "expenses" is not ambiguous, and the Court will enforce it as written. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

We therefore affirm the trial court's ruling on Hansen's summary judgment motion only as to those medical expenses incurred prior to December 18, 2007. As to all other claims for expenses or damages, we reverse.

## Conclusion

Summary judgment was improper based on both the affirmative defense of accord and satisfaction and the affirmative defense of release for expenses and damages other than the expenses settled and released in the December 18, 2007 document. We affirm the trial court's summary judgment as to medical expenses incurred prior to December 18, 2007, and we remand the cause to the trial court for further proceedings on all other issues.

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED: September 16, 2010

11