SUN COMPANY, INC. (R & M), a Delaware corporation, and Texaco, Inc., a Delaware corporation, Plaintiffs,

v.

BROWNING–FERRIS, INC., a Delaware corporation, et al., Defendants.

94–C–820–K.

United States District Court,
N.D. Oklahoma.

March 20, 1996.

1524

William D. Perrine, John H. Tucker, Benton T. Wheatley, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, for Sun Company, Inc. (R & M), Texaco Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Robert A. Franden, Feldman Hall Franden Woodward & Farris, Tulsa, OK, Jonathan R. Haden, William G. Beck, L.J. Buckner, Jr., Lathrop & Gage, Kansas City, MO, for Browning–Ferris, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, J. Randall Miller, David P. Page, Lloyd W. Landreth, Gardere & Wynne, Tulsa, OK, for Atlantic Richfield Co.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, for Consolidated Cleaning Service Co., Inc.

Danny P. Richey, Pezold Richey Caruso & Barker, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Apartment Container Service, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Danny P. Richey, Pezold Richey Caruso & Barker, Tulsa, OK, for Oil Capitol Trash Service, Inc. and John D. Shipley.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Thomas M. Affeldt, Savage O'Donnell Scott McNulty, et al., Tulsa, OK, for Tom Farris.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, W. Kirk Clausing, Tulsa, OK, for Brierly Plumbing Technologies Corp.

Michael D. Davis, Steven M. Harris, Doyle & Harris, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Glenn E. Wynn, Jr., and Stan P. Doyle.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Terence P. Brennan, Terence P. Brennan, Attorney at Law, Tulsa, OK, for Borg Industrials Group, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, William C. Anderson, G. Michael Lewis, Russell W. Kroll, Doerner Saunders Daniel & Anderson, Tulsa, OK, Danny P. Richey, Pezold Richey Caruso & Barker, Tulsa, OK, for Steve Richey.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Richard Carpenter, Carpenter Mason & McGowan, Tulsa, OK, for O.K. Tank Trucks, Inc.

Danny P. Richey, Pezold Richey Caruso & Barker, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Ross Scoggins, Sr. and Odean Garrison.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, William C. Anderson, G. Michael Lewis, Russell W. Kroll, Doerner Saunders Daniel & Anderson, Tulsa, OK, for Robert E. Sparks and Public Service Co. of Oklahoma.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Lisa S. Zebovitz, Waste Management, Inc., Senior Environmental Counsel,

Oak Brook, IL, Robert Gist, Oklahoma City, OK, Matthew Livingood, Tulsa, OK, for Waste Management of Oklahoma, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Ronald D. Cates, Tulsa, OK, for City of Sand Springs.

Randall G. Vaughan, J. Warren Jackman, Pray Walker Jackman Williamson & Marlar, Tulsa, OK, G. Lawrence Fox, Bank IV Oklahoma, Tulsa, OK, for Bank IV Oklahoma, N.A.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Richard Carpenter, Philip McGowan, Carpenter Mason & McGowan, Tulsa, OK, for Mid–America Stockyards, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Gerald G. Stamper, Nichols Wolfe Stamper Nally & Fallis Inc., Tulsa, OK, for Cowen Construction, Inc., National Tank Co. and Beverage Products Corp.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Gerald G. Stamper, Nichols Wolfe Stamper Nally & Fallis Inc., Tulsa, OK, Charles M. Sublett, Sublett & Shafer, Tulsa, OK, for Peevy Construction Co., Inc.

John R. Paul, Richards Paul Richards & Siegel, Tulsa, OK, for Phillips & Lomax Agency, Inc.

Steve Clouser, James Poe, Covington & Poe, Tulsa, OK, Charles O. Hanson, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Empire Roofing & Insulation Co.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Robert L. Roark, John S. Gardner, McKinney Stringer & Webster, Oklahoma City, OK, Patrick H. Kernan, McKinney Stringer & Webster, Tulsa, OK, Robert L. Dysart, Bess & Dysart P.C., Phoenix, AZ, for Union Carbide Corporation.

E. Scott Pruitt, Tulsa, OK, for Tulsa Rig & Iron.

Darrell E. Williams, Clark & Williams, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Crain Displays & Exhibits, Inc.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Richard Carpenter, Carpenter Mason & McGowan, Tulsa, OK, Kenneth R. Johnson, Johnson & Nimmo, Ada, OK, for Stallings, Inc.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Rodney A. Edwards, Tulsa, OK, for Carnes Bros Construction Co.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Dwight L. Smith, Jeffrey G. Levinson, Levinson & Smith, Tulsa, OK, for Bankoff Oil Co., Inc.

William C. Anderson, G. Michael Lewis, Russell W. Kroll, Doerner Saunders Daniel & Anderson, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Brent W. Schindler, Dow Chemical Company, Midland, MI, for Dow Chemical Company.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Richard Casey Cooper, R. Kevin Layton, Boesche McDermott & Eskridge, Tulsa, OK, for Sun Chemical Corp.

Gerald G. Stamper, Nichols Wolfe Stamper Nally & Fallis Inc., Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Fleming Building Company, Inc.

Claire V. Eagan, Hall Estill Hardwick Gable, Golden & Nelson, Tulsa, OK, James C. Hodges, Kevin H. Wylie, Eller & Detrich, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Anchor Paint Mfg. Co.

Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, Phil Frazier, Frazier, Smith & Phillips, City of Glenpool, Tulsa, OK, for Langston Contractors, Inc.

Samuel Thomas Allen, III, Loeffler, Allen & Ham, Sapulpa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Petroleum Contractors Corporation.

Richard Casey Cooper, R. Kevin Layton, Boesche McDermott & Eskridge, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Ozark Mahoning Co.

Joseph Paulk, Paulk & Moles, Tulsa, OK, for Ameron, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Lawrence D. Taylor, Tulsa, OK, for Charles Forehand.

Michael D. Davis, Steven M. Harris, Doyle & Harris, Tulsa, OK, Richard D. Wagner, I. Michele Drummond, Wagner Stuart & Cannon, Tulsa, OK, Richard K. Holmes, Hanson, Holmes, Field & Snider, Tulsa, OK, for Vacuum & Pressure Tank Truck Services, Inc.

Frederick C. Cornish, Cornish & Zieren, Tulsa, OK, Howard D. Perkins, Jr., Tulsa, OK, for Monte Shipley.

## ORDER

KERN, District Judge.

Now before this Court is the motion for summary judgment by Defendant Group II ("Defendants")[1] against Plaintiffs Sun Company, Inc. and Texaco, Inc. ("Plaintiffs"). Plaintiffs brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, for costs expended by Plaintiffs in response to an order by the Environmental Protection Agency ("EPA") to perform remediation at the Compass landfill site ("the Site"), pursuant to section 106 of CERCLA, 42 U.S.C. § 9606. Plaintiffs also seek a declaratory judgment declaring their right to recover past and future response costs attributable to cleanup of the Site. In addition, Plaintiffs assert state law claims of contribution and/or indemnity against Defendants.

## I. Facts

The Site is a piece of property situated on the south bank of the Arkansas River in Tulsa County. It is an abandoned limestone quarry that was operated as a permitted landfill from 1972 to 1976. During the time of its operation, material containing hazardous substances within the meaning of CERCLA section 101(14), 42 U.S.C.

§ 9601(14), were delivered to the Site. This material began to be released into the soil, surface water, and groundwater near and beneath the Site. The EPA found amounts of hazardous substances in the soil and groundwater beneath the Site, including chemicals listed as hazardous substances within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

In September 1984, the EPA placed the Site on the National Priority List. 40 C.F.R. Part 300, App. B. On September 29, 1987, the EPA issued a Record of Decision ("ROD"), which selected a remedy for the site that was deemed by the EPA and the State of Oklahoma to be consistent with CERCLA and the National Contingency Plan ("NCP"), 33 U.S.C. § 1321(c); 42 U.S.C. § 9605; 40 C.F.R. Part 300, *et seq.* The remedy selected by the EPA specified a "RCRA" quality cap or cover to be placed over the contaminated material, with a synthetic liner between the cap and the contaminated materials to prevent seepage or drainage of rainwater, installation and monitoring of wells for purposes of compliance monitoring of groundwater, site grading, diversion of surface water, air emissions monitoring, installation of fences and signs along the perimeter of the cap, monitoring of the Site for a period of 30 years to ensure that no significant contamination concentrations migrate from the Site, and if necessary, collection and on-site treatment of contaminated groundwater. On May 31, 1989, in a Unilateral Administrative Order styled, *In the Matter of Braniff, Inc., et al.*, United States Environmental Protection Agency, Region 6, Dallas, Texas, Docket Number CERCLA VI–05–89, the EPA ordered Plaintiffs, pursuant to section 106 of CERCLA, 42 U.S.C. § 9606, to remediate the Site as set forth in the ROD. Plaintiffs Sun and Texaco agreed to perform the remediation in compliance with the Administrative Order and ROD. Plaintiffs be-

---

1. Defendant Group II members include: Atlantic Richfield Company, Bankoff Oil Co., Inc., Beverage Products Corp., Borg Industrial Group, Inc., d/b/a American Container Services, Browning–Ferris, Inc., Consolidated Cleaning Service Co., Cowen Construction, Charles Forhan, d/b/a D & W Exterminating, National Tank Co., Oil Capital Trash Services, Inc., Peevy Construction Co., Inc., Public Service Co. of Oklahoma, Steve Richey d/b/a Richey Refuse Service, City of Sand Springs, John D. Shipley, Monte Shipley, Shipley Refuse, Robert E. Sparks, d/b/a Tulsa Industrial Service, Sun Chemical Corporation, Union Carbide Corp., and Waste Management of Oklahoma, Inc., successor to Tulsa Industrial Disposal Services.

gan remediation activities in January 1990. Response actions were completed on or by August 29, 1991. Plaintiffs incurred response costs as a result of the Administrative Order.

Plaintiffs filed the instant action on August 29, 1994, seeking to recover from Defendants the costs that Plaintiffs expended in response to the Administrative Order and seeking a declaratory judgment allocating liability for past and future response costs.

## II. Discussion

### A. Summary Judgment Standard

■ Summary judgment, pursuant to Fed. R.Civ.P. 56, is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The Supreme Court explains:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "The questions of statutory construction and legislative history raised herein present legal questions properly resolved by summary judgment." *State of Oklahoma ex rel. Dept. of Human Services v. Weinberger*, 741 F.2d 290, 291 (10th Cir.1983), *cert. denied sub nom Farrah v. United States*, 466 U.S. 971, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984) (citing *Union Pacific Land Resources Corporation v. Moench Investment Company, Ltd.*, 696 F.2d 88 (10th Cir.), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1776, 76 L.Ed.2d 348 (1982)).

### B. CERCLA Causes of Action

■ The first issue is which causes of action are available to Plaintiffs under CERCLA, as amended by the Superfund Amendment and Reauthorization Act of 1986 ("SARA"), 100 Stat. 1613 (1986). In *United States v. Colorado & Eastern Railroad*, 50 F.3d 1530 (10th Cir.1995), the Tenth Circuit explained that CERCLA provides two types of legal actions by which parties can recoup some or all of their costs associated with hazardous waste cleanup: cost recovery actions under CERCLA section 107(a), 42 U.S.C. § 9607(a), and contribution actions under CERCLA section 113(f), 42 U.S.C. § 9613(f). *Id.* at 1535. Plaintiffs assert causes of action under both sections; Defendants contend that Plaintiffs can only bring a section 113(f) contribution action.

Although the circuits are divided, the Tenth Circuit has decided this question, and this Court must follow the precedent of the Tenth Circuit regardless of this Court's views concerning the advantages of the precedent of our sister circuits. *United States v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir.1990). In *Colorado & Eastern*, the Tenth Circuit held that "claims between [Potentially Responsible Parties ("PRPs")] to apportion costs between themselves are contribution claims pursuant to § 113 regardless of how they are pled." *Colorado & Eastern Railroad*, 50 F.3d at 1539. Therefore, the only cause of action available to a PRP seeking to recover from another PRP for cleanup costs is a § 113(f) contribution action. *Id.* at 1536. *See also Bancamerica Commercial Corp. v. Trinity Industries*, 900 F.Supp. 1427, 1450 (D.Kan.1995) ("The Tenth Circuit recently held that when one potentially responsible party sues another to recover expenditures incurred in cleanup and remediation, the claim is one for contribution and is controlled by § 113(f).") (Citing *Colorado & Eastern*).

■ There is no genuine issue as to the classification of Plaintiffs as PRPs under CERCLA section 107(a), 42 U.S.C. § 9607(a). Although Plaintiffs apparently dispute, parenthetically, that they are PRPs (Plaint. Resp. at 5), they concede that they generated wastes containing hazardous substances that were transported to the Site. (*See* Plaint.

Resp. at 4 (not disputing Defendants' statement of undisputed material fact No. 7).)[2] "Generator" or "arranger" liability under section 107(a)(3) of CERCLA is imposed on

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3).

■ Courts have construed this section broadly in holding generators liable under CERCLA. *See United States v. Hardage*, 750 F.Supp. 1444, 1458 (W.D.Okla.1990); *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1380 (8th Cir.1989) (noting that courts have concluded that a liberal judicial interpretation of arranger liability provision is consistent with CERCLA's remedial statutory scheme). A generator need not have selected the site; indeed, courts have held defendants "arranged for" disposal of wastes at a particular site even when defendants did not know the substances would be deposited at that site or in fact believed they would be deposited elsewhere. *See id.* at 1381; *United States v. Ward*, 618 F.Supp. 884, 895 (E.D.N.C.1985); *State of Missouri v. Independent Petrochemical Corp.*, 610 F.Supp. 4, 5 (E.D.Mo.1985); *United States v. Wade*, 577 F.Supp. 1326, 1333 n. 3 (E.D.Pa.1983).

■ Under CERCLA, a party who generates hazardous substances and arranges for their disposal is strictly liable for all costs of remediating environmental damages at the site where the substances ultimately are deposited, regardless of whether the party was at fault or whether the substance actually caused or contributed to any damages. *See St. Paul Fire and Marine Ins. v. Warwick*

*Dyeing*, 26 F.3d 1195, 1197–98 (1st Cir.1994). Since Plaintiffs admit generating the substances that were transported and ultimately deposited at the Site, and since Plaintiffs' wastes were by their own estimation present at the Site at the time of the cleanup, and given the fact that Plaintiffs have proffered no evidence, nor even a cogent argument, contrary to a finding that they are PRPs, this Court finds that Plaintiffs are PRPs. *See Cook v. Jackson Nat. Life Ins. Co.*, 844 F.Supp. 1410, 1412 (D.Colo.1994) (holding that party opposing summary judgment motion "must produce specific facts showing that there remains a genuine issue of material fact for trial;" mere assertions not enough to survive summary judgment) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988)).[3] Therefore, since the instant CERCLA action involves PRPs seeking to recover from other PRPs for cleanup costs, Plaintiffs are limited to a contribution action pursuant to CERCLA section 113(f). *See Colorado & Eastern Railroad*, 50 F.3d at 1536, 1539.

Plaintiffs contend that under *Key Tronic v. United States*, —— U.S. ——, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), they are entitled to bring both a CERCLA section 107(a) action as well as a section 113(f) action, and that *Colorado & Eastern* can be distinguished from the instant case. In *Key Tronic* the Court considered whether CERCLA permitted the recovery of attorney fees; the Court did not focus on the exclusivity of section 113 actions in disputes between PRPs. The Court indicated that with the passage of SARA, both sections 107 *and* 113 provide a cause of action for private parties seeking to recover cleanup costs. "[T]he statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." *Id.* at ——, 114 S.Ct. at 1966. Plaintiffs contend that *Key Tronic* supports their argument that both sections

**2.** *See also* EPA's First Amended Unilateral Order, attached at Def.Br.Supp.Summ.J.Ex. A at 9–11 (classifying Sun and Texaco as responsible parties pursuant to section 107 of CERCLA); Plaintiffs' Allocation Sheet, attached at Def.Br.Supp.Summ.J.Ex. C (listing selves as PRPs); EPA Allocation Sheet, attached at Def.

Br.Supp.Summ.J.Ex. D (listing Plaintiffs as PRPs).

**3.** Since Defendants' status as PRPs is a condition precedent to recovery by Plaintiffs under CERCLA, it is assumed for purposes of this order that Defendants are PRPs as well.

107 and 113 provide viable causes of action in the instant case.

This Court does not believe *Colorado & Eastern* is distinguishable from the instant case; therefore, *Colorado & Eastern* controls.[4] Plaintiffs point to the fact that *Key Tronic* involved a claim for response costs incurred independently of a civil action, as in the instant litigation; whereas, *Colorado & Eastern* involved claims asserted subsequent to a civil action. Without pointing to language by either the Supreme Court or Tenth Circuit, Plaintiffs argue that when, as here, a party incurs response costs *prior* to a civil action, it may bring either a section 107 or 113 action (or both) against other PRPs; whereas, when a party incurs response costs *subsequent* to a civil action, it may only bring a section 113 action. The Tenth Circuit, however, makes no such distinction. It states simply, "Whatever label [Appellee] may wish to use, its claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Colorado & Eastern*, 50 F.3d at 1536. Noting that the two parties were PRPs, the Court held that any claim that would reapportion costs between them "is the quintessential claim for contribution." *Id.* at 1536 (citing Restatement (Second) of Torts § 886A and *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989)).[5] Since the instant case involves claims between PRPs to apportion costs between themselves, Plaintiffs are confined to bringing a section 113(f) contribution action, regardless of how they plead their claims. As a Utah district court explained, it is the parties' status as PRPs that limits Plaintiffs to a section 113 contribution claim, in accordance with *Colorado & Eastern. See Ekotek Site PRP Committee v. Self,* 881 F.Supp. 1516, 1521 (D.Utah 1995) (holding that cost recovery action by one PRP against another

PRP is limited to a section 113(f) contribution action and declining to distinguish *Colorado & Eastern* based on whether claimant had voluntarily incurred response costs).

### C. Statute of Limitations for CERCLA Action

■ Neither Plaintiffs nor Defendants dispute that the applicable statute of limitations for a section 113 contribution action is three years. *See* 42 U.S.C. § 9613(g)(3). The issue in dispute is when the statute of limitations begins to accrue. Both parties agree that under the literal terms of the statute, no triggering event has yet occurred in the present case. The statute of limitations section governing contribution actions provides as follows:

> No action for contribution for any response costs or damages may be commenced more than three years after—
>
> **(A)** the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> **(B)** the date of an administrative order under section 9622(g) of this title (relating to *de minimis* settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3). Plaintiffs incurred cleanup costs in response to an EPA § 106 Administrative Order, not one of the triggering events listed above.

Therefore, the question is whether the statute of limitations has yet to accrue—and as Defendants point out, may never accrue— or whether this Court must supply a triggering event for accrual of the statute of limitations. One district court in this circuit has held that when a PRP incurs response costs as a result of an EPA consent order, that

---

4. Moreover, this Court presumes that *Colorado & Eastern* is consistent with *Key Tronic*, which was decided nine months prior to *Colorado & Eastern. See also United Technologies Corp. v. Browning–Ferris Industries*, 33 F.3d 96, 103 n. 12 (1st Cir.1994) (noting that its holding that a PRP was limited to a § 113(f) contribution action was consistent with *Key Tronic*), *cert. denied*, —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995).

5. A civil action clearly is not a precondition for bringing a contribution action, either under CERCLA, *see* § 113(f)(1) ("Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title."), or common law, *see* Restatement (Second) of Torts § 886A.

PRP's subsequent contribution action is not subject to the statute of limitations because the consent order is not one of the four triggering events under CERCLA section 113(g)(3). *Ekotek Site PRP Committee v. Self*, 881 F.Supp. 1516, 1522–24 (D.Utah 1995). *See also Gould Inc. v. A & M Battery and Tire Service*, 901 F.Supp. 906, 914–15 (M.D.Pa.1995) (holding that since none of the four § 113(g)(3) triggering events had occurred, plaintiff's contribution claim was not time barred).

This Court disagrees. Such a result would provide a loophole at odds with the purposes of CERCLA. The structure of the statute indicates a legislative intent to restrict cost recovery and contribution actions to definite periods of time. *See* 42 U.S.C. § 9613(g). No public policy interest consistent with CERCLA would be served by allowing certain PRPs unlimited time in which to bring a contribution action simply because they happen to incur cleanup costs in response to a particular species of governmental prodding.[6] Rather, Congress' failure to supply a triggering event for cases such as the instant one— where cleanup costs are incurred as a result of an EPA § 106 administrative order—appears to be an inadvertent omission. This Court does not discern an intent by Congress to allow PRPs in Plaintiffs' circumstances to keep other PRPs on the hook indefinitely. Indeed, there are strong public policy interests that militate against allowing parties, such as Plaintiffs, who do not enter into a settlement with the EPA but incur response costs as a result of prodding by an EPA administrative order, to evade a statute of limitations on subsequent contribution actions.

█ Since the CERCLA statute does not provide a triggering event for cases such as the instant one, this Court must supply one, looking to federal common law for guidance. *See Baker v. Bd. of Regents, Kansas*, 991 F.2d 628, 632 (10th Cir.1993) ("Federal law controls questions relating to accrual of federal causes of action.") (citing *Newcomb v.*

*Ingle*, 827 F.2d 675, 678 (10th Cir.1987)). While the Tenth Circuit has not established a federal common law rule for the accrual of contribution actions, the Third Circuit has. This Court adopts that standard: Absent a judgment, a cause of action for contribution does not arise until the party seeking contribution has paid more than her fair share of a common liability. *Sea–Land Service, Inc. v. United States*, 874 F.2d 169, 171 (3rd Cir. 1989). *See also Bradford v. Indiana & Michigan Elec. Co.*, 588 F.Supp. 708, 714 (S.D.W.Va.1984) (quoting *Northwest Airlines, Inc. v. Glenn L. Martin Co.*, 161 F.Supp. 452, 458 (D.Md.1958)). *See generally*, Maurice T. Brunner, Annotation, *When Statute of Limitations Commences to Run against Claim for Contribution or Indemnity Based on Tort*, 57 ALR 3d 867, 877 ("[T]he cause of action for contribution accrues—becomes a right enforceable in a court action—when one of the joint tortfeasors pays more than his proportionate share of the damages. On the date of such payment the inchoate claim ripens into maturity, and whatever the applicable period of limitations, the time then starts to run.").

### D. Statute of Limitations for State Law Cause of Action

█ Again there is a dispute as to the applicable statute of limitations for a contribution action brought under Oklahoma law. Although section 832 of title 12 of the Oklahoma Statutes provides a right of contribution among two or more persons who become jointly or severally liable in tort for the same injury to persons or property, there is no provision within title 12 or any other statute that establishes a statute of limitations for contribution actions. Nevertheless, section 95(2) of title 12 establishes a three-year statute of limitations for "an action upon a liability created by statute other than a forfeiture or penalty." Since Plaintiffs bring a contribution claim under a statute—Okla.Stat. tit. 12, § 832 (1996)—their action falls under the terms of the section 95(2) limitation provi-

---

**6.** Plaintiffs' remediation of the Site can hardly be characterized as voluntary. As Plaintiffs acknowledge, a party receiving an EPA § 106 order "is faced with little choice but to comply."

(Plaint.Resp. at 3.) Challenges to ordered remedial action are limited under the statute, and penalties for noncompliance are severe. *See* 42 U.S.C. § 9606(b).

sion.[7] Both parties agree that Oklahoma has the same accrual rule for contribution actions as that described above under federal common law. *See Wilson v. Crutcher,* 176 Okla. 481, 56 P.2d 416, 417 (1936) ("[T]he statute of limitations does not begin to run against a claim for contribution until the plaintiff has discharged the common debt, or paid more than his share of it."). Therefore, Plaintiffs' state law action for contribution is under the same time limitations as their CERCLA contribution action: three years from the point in time at which Plaintiffs paid more than their fair share of the response costs.

### E. Is Plaintiffs' Entire Contribution Claim Time Barred?

■ There remains the question of whether the three-year statute of limitations bars Plaintiffs' entire claim if they filed the instant action more than three years after they paid their pro rata share, or whether they are simply barred from recovering any costs paid prior to the three-year cutoff. While the law in the Tenth Circuit and in Oklahoma is not clear on this question, state courts in Kansas, Kentucky and Wisconsin have employed the following rule: Where one of multiple co-obligors, between whom there may be contribution, makes partial payments on the obligation, the statute of limitations begins to run as to such payments from the time he pays the creditor more than his proportion of the debt, *and runs separately on each payment made after the co-obligor pays his fair share, and is computed separately on each payment from the date upon which it is made. See Kee v. Lofton,* 12 Kan.App.2d 155, 737 P.2d 55, 59 (1987) (citing *Robinson v. Jennings,* 70 Ky. 630 (1870)); *Bushnell v. Bushnell,* 77 Wis. 435, 46 N.W. 442 (1890). In other words, if one co-obligor has made partial payments aggregating more than his share of the debt, but the statute of limitations has run as to some of those payments, he is entitled to judgment against his co-obligors for the full amount of payments on which the statute has not run, provided such sum is less than the defendant co-obligor's proportion of the debt, and the payments on which the statute has run equal or exceed the claimant's proportion. *See* 18 Am.Jur.2d *Contributions* § 104 (1964).

This Court finds this rule just and equitable under the instant circumstances and adopts it for determining what expenditures by Plaintiffs are within the period of limitations. Although it appears that the bulk of Plaintiffs' claims for contribution are time-barred, Plaintiffs are entitled to recover by contribution any payments made within three years of their filing of the instant action, provided they paid their fair share prior to that date.

### F. Declaratory Judgment

■ Plaintiffs seek, *inter alia,* a declaratory judgment allocating liability for past and future response costs. Defendants argue that Plaintiffs are not entitled to a declaratory judgment because they are limited to a section 113 contribution action, and CERCLA section 113(g)(2) provides for declaratory relief only in section 107 actions. Defendants are only partially correct.

■ Since this Court has determined that Plaintiffs are limited to a section 113 contribution action, they are not entitled to a declaratory judgment under section 113(g)(2). However, this Court retains inherent authority, absent an express statutory command to the contrary, to fashion appropriate remedies in civil suits over which it has jurisdiction. *See* 28 U.S.C. § 2201(a).[8]

7. Plaintiffs contend that the appropriate statute of limitations is provided by a residual catch-all provision in title 12 which establishes a five-year limitations period for "[a]n action for relief, not hereinbefore provided for...." Okla.Stat. tit. 12, § 95(9) (1996). Since section 95(2) clearly provides the statute of limitations in the instant case, the residual provision does not apply. Defendants argue, *inter alia,* that contribution claims are governed by the same limitation period as the underlying cause of action, citing *Gilliland v. Snedden,* 195 Okla. 601, 159 P.2d 734

(1944). This Court does not read *Gilliland* to stand for that proposition.

8. The Declaratory Judgment Act provides:

   In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the

This Court may enter a declaratory judgment on a question if it presents a definite and concrete controversy, touching the legal relations of parties having adverse legal interests. The controversy "must be ... real and substantial ... admitting of specific relief through a decree of a conclusive character." *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273–74 (10th Cir.1989); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). *Cf. U.S. National Bank of Oregon v. Independent Insurance Agents*, 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions.").

■ Given the circumstances and facts alleged in the instant case, there is no doubt that the question of what rule governs apportionment of response costs between parties presents a real and substantial controversy, touching the legal relations of parties having adverse legal interests.[9] Although it is not clear what, if any, expenses Plaintiffs incurred within the limitations period, Plaintiffs allege that they "will continue to incur response costs that are consistent with the NCP with respect to the site to abate the alleged release or threatened release of hazardous substances into the environment which has occurred or may occur from the site." (Third Amend.Compl. ¶ 107.) The remedy required by the EPA involves likely future expenditures, including continuing monitoring and possible future treatment. *See* discussion of required remediation *supra* page 1527–1528.

Therefore, since the question of the apportionment scheme for past and future response costs does present a real controversy, and a ruling will clarify a legal question at issue and mitigate uncertainty, a declaratory judgment is appropriate. *See Kunkel*, 866 F.2d at 1275. However, given the uncertainty as to the amount of response costs incurred within the limitations period, and the amount likely to be incurred in the future, this Court need not, indeed it cannot, issue a ruling defining the precise contours of an apportionment scheme. The Tenth Circuit has explained that the declaratory relief granted need not entirely dispose of the matter; necessary and proper relief based upon factual disputes not yet resolved may be sought at a later time. *Kunkel*, 866 F.2d at 1274 (citing 28 U.S.C. §§ 2201–02).

■ Insofar as this Court can clarify, to some degree, the legal relations between the parties, it holds as follows. Since Plaintiffs are limited to a section 113 contribution action, they are not automatically entitled to seek joint and several liability from Defendants, as are section 107 plaintiffs; rather, Plaintiffs are limited to seeking Defendants' equitable share. However, given the uncertainty as to the amount of claims available to Plaintiffs, it is not presently possible to determine what equitable factors should govern the apportionment of response costs. *See* 42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court may allocate response costs among the liable parties under such equitable factors as the court determines are appropriate."). The Tenth Circuit has explained that a district court "has considerable discretion in apportioning equitable shares of response costs. It can allocate the response costs among the liable parties using any equitable factors it deems appropriate." *FMC Corp. v. Aero Indust.*, 998 F.2d 842, 846 (10th Cir.1993). Analogously, this Court must consider equitable factors presented by the pres-

---

force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).

9. Several circuits have considered whether CERCLA claims, which by their nature are often speculative, support a declaratory judgment. The Sixth Circuit noted that it is not essential that the threatened injury be absolutely immedi-

ate and real; only sufficiently immediate and real. *Kelley v. E.I. DuPont De Nemours and Co.*, 17 F.3d 836, 845 (6th Cir.1994). *See also Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985) (holding that a party seeking declaratory relief in a CERCLA action must allege facts to support a likelihood that his opponent's injurious conduct has continued or will be repeated in the future).

ent case in determining what precise apportionment scheme to apply. Assuming that Plaintiff paid their fair share prior to the initiation of the three-year limitations period, the question remains whether Plaintiffs may impose joint and several liability against all Defendants for all costs incurred after that date, in which case the Defendants would bear the burden of splitting their share, or whether Plaintiffs are limited to recovering from each Defendant on a several basis.[10]

For the same reasons, it is premature to rule on the appropriate credit rule. As Judge Brett observed, a district court "has the discretion to apply the credit rule which under the facts of the instant case will best achieve the overriding purpose and objectives of CERCLA." *Atlantic Richfield Co. v. American Airlines*, 836 F.Supp. 763, 766 (N.D.Okla.1993). Since the actual amount in controversy is unclear, it is not possible to determine which credit rule—the proportionate rule or the *pro tanto* rule—would be most equitable and efficacious in the instant case.

### III. Conclusion

Defendants' motion for summary judgment is granted in part and denied in part. Plaintiffs' first, second and third claims for relief under CERCLA section 107(a) are dismissed. Plaintiffs may pursue a CERCLA 113(f) contribution claim and state law contribution claim as to those response costs incurred within three years of the filing of the instant action—that is, on or after August 30, 1991. This Court reserves ruling on Plaintiffs' request for declaratory relief regarding the nature of Defendants' liability pending the submission of supplemental briefs by both parties detailing response costs incurred on or after August 30, 1991, as well as those costs likely to be incurred in the future, and discussing appropriate equitable factors that

the Court should consider in deciding the nature of Defendants' liability and the appropriate credit rule. Parties are directed to file supplemental briefs within 30 days of the filing of this Order.

IT IS SO ORDERED.

---

**10.** Several district courts that have addressed this question have limited plaintiffs pursuing a section 113 contribution action to obtaining several liability against defendants. *See Plaskon Electronic Materials v. Allied–Signal*, 904 F.Supp. 644, 651 (N.D.Ohio 1995) (noting that liability under § 107(a) is joint and several, while liability under § 113(f) is merely several) (citing *Kaufman & Broad–South Bay v. Unisys Corp.*, 868 F.Supp. 1212, 1213–15 (N.D.Cal.1994)); *Gould Inc. v. A*

*& M Battery and Tire Service*, 901 F.Supp. 906, 913 (M.D.Pa.1995) ("Since liability under a § 113 action is several, not joint and several, each party is only responsible for their proportionate share of the harm caused at the [CERCLA site]."). Nevertheless, this Court may devise an apportionment scheme based on equitable principles suitable to the circumstances of the instant case.